IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES PISANO** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **NATIONWIDE MUTUAL FIRE** | : | |
| **INSURANCE COMPANY** | : | **NO. 08-2524** |

**Goldberg, J.**                                                                                                        **October 21, 2009**

## MEMORANDUM OPINION AND ORDER

This case involves an insurance coverage dispute stemming from a rainstorm which caused approximately four feet of water to collect in the basement of Plaintiff, James Pisano's, commercial property. Defendant Nationwide Mutual Fire Insurance Company (hereinafter referred to as "Nationwide") has moved for partial summary judgment, which, for the reasons set forth below, will be granted.

**I. FACTS**

Pisano owns 1648-1652 Passyunk, a property in Philadelphia, Pennsylvania. The property includes three addresses: 1648, 1650 and 1652 Passyunk Avenue. 1648 Passyunk is a three story building, with apartments on the top two floors and a jewelry store on the first floor. 1650 and 1652 Passyunk are a one story restaurant. The basement in question, extends below all three addresses.

After a rainstorm on August 26, 2006, Pisano's property suffered water damage, including damage to personal property. At the time of the storm, Pisano had a commercial building insurance policy issued by Nationwide insuring this property and its contents. In pertinent part, the

1

"Exclusions" section of the policy contained the following lead-in clause and specific water exclusion:

> B. EXCLUSIONS
>
> 1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
> . . .
> g. Water
>    (1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;
>    (2) Mudslide or mudflow;
>    (3) Water that backs up or overflows from a sewer, drain or sump; or
>    (4) Water under the ground surface pressing on, or flowing or seeping through:
>        (a) Foundations, walls, floors or paved surfaces;
>        (b) Basements, whether paved or not; or
>        (c) Doors, windows or other openings.

(Policy, Nationwide's Motion, Exhibit C).

On August 29, 2006, Pisano reported the claim to Nationwide, representing that a drain line that was in place to channel roof water had separated, causing some damage to the first floor jewelry store and significant damage to the basement. On August 31, 2006, Nationwide sent contractor, Joseph Kurtz, to Pisano's property to conduct an initial inspection of the damage. (Nationwide's Motion, ¶¶ 8-10). Additionally, David Porter, an adjustor for Nationwide, inspected the property on September 20, 2006, and observed a 43 inch water line and 1½ inches of mud in the basement. (Nationwide's Motion, ¶¶ 11, 17). Nationwide also retained engineer, Jody DeMarco, who inspected the property and on October 13, 2006, reported that:

> Based upon observation[s] made during the site investigation and research, it has been determined the subject building experienced a leak via the conduit from the roof drain. This leak caused water to enter the interior of the building in the vicinity of the basement stairs. This leak caused damage to interior walls and ceiling tiles.

2

>Additionally, the basement of the subject building experienced water intrusion from a ground source. This ground source accounts for the large amount (42 inches) of water and the silt along the floor and walls of the basement.
>
>While the roof drain contributed to the water intrusion in the building, the vast majority of the water damage is a result of water entering the basement from a ground source.

(DeMarco Report, Nationwide's Motion, Exhibit C).

Based on DeMarco's findings, Nationwide determined that the basement damage was caused primarily by "ground water, surface water and flood water." Consequently, on October 14, 2006, Nationwide sent Pisano correspondence declining coverage for the basement damage but offering to pay for first floor damages caused by "a failed roof drain." (Correspondence, Nationwide's Motion, Exhibit C).

Pisano filed his original complaint against Nationwide on April 23, 2008, in the Philadelphia County Court of Common Pleas. Nationwide removed the case to this district, and thereafter, Pisano filed an Amended Complaint on June 19, 2008, alleging four counts: (I) Breach of Contract; (II) Bad Faith; (III) Violations of the Unfair Trade Practices and Consumer Protection Law; and (IV) Deceit. Nationwide's Motion to Dismiss Counts III and IV, was granted by the Honorable Eduardo C. Robreno on August 1, 2008, and, thereafter, the case was transferred to the undersigned. Nationwide has now moved for partial summary judgment, seeking the dismissal of Count I - Breach of Contract, as it pertains to basement damages, and Count II - Bad Faith.

## II. **DISCUSSION**

Summary judgment may be entered where there are no genuine issues as to any material fact and one party is entitled to judgment as a matter of law. White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988). The evidence presented must be viewed in the light most favorable to

the non-moving party.  Id.  "The inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one sided that one party must, as a matter of law, prevail over the other."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  The Court's function, in deciding a Motion for Summary Judgment, is not to decide disputed questions of fact, but only to determine whether genuine issues of fact exist.  Id. at 248-249.

A party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case."  Id. at 325.  After the moving party has met its initial burden, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Id. at 322.

As this court resides in Pennsylvania, the choice of law rules of Pennsylvania apply.  Klaxon Company v. Stentor Electrical Manufacturing Company, Inc. 313 U.S. 487, 496 (1941).  When examining insurance contracts, the court "must apply the law of the state having the most significant contacts or relationships with the particular issue . . . The weight of a particular state's contacts must be measured on a qualitative rather than quantitative scale."  Caputo v. Allstate Insurance Company, 495 A.2d 959, 961 (Pa. Super. 1985) (citing In Re Estate of Agostini, 457 A.2d 861, 871 (Pa. Super. 1983)).  "The state where property is located has a more compelling interest in what happens to the property because the location of the property will have at least some effect on the cost of insurance."

Hartford Fire Ins. Co. v. WSR Corp., 2000 WL 974328, at *3 (E.D. Pa. July 14, 2000) (citing Miller v. S.T. Good Insurance, Inc., 952 F.Supp. 238, 241 (E.D. Pa. 1997)).

The task of interpreting an insurance contract is generally performed by the court. Standard Venetian Blind Co. v. Am. Empire Ins. Co., 469 A.2d 563, 566 (Pa. 1983). When interpreting an insurance contract, the goal is to ascertain the intent of the parties as manifested by the language of the written instrument. Id. Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer. Id. An insurance policy provision is ambiguous if it is reasonably susceptible to more than one interpretation. The Medical Protective Company v. Watkins, 198 F.3d 100, 103 (3d Cir.1999).

### A. The Lead-in Clause and Breach of Contract Claim

The parties agree that damage caused solely by water from the broken roof drain would be a covered cause of loss under the policy. Indeed, in its October 14, 2006 coverage correspondence to Pisano, Nationwide accepted coverage for the first floor damages they believe were caused by the drain. However, Nationwide asserts that where damage is caused by both water from an excluded source and from the roof drain, the lead-in clause of the policy precludes coverage.

In support of this position, Nationwide cites to T.H.E. Ins. Co. v. Charles Boyer Children's Trust, 455 F. Supp.2d 284 (M.D. Pa. 2006), where the court stated that, "[r]ead literally, the lead-in clause precludes coverage of a loss so long as a specifically enumerated exclusion contributed in some way to the loss. Under this literal interpretation of the lead-in clause, the degree to which an excluded factor contributed to the loss is irrelevant." Id. at 291. In T.H.E. Ins., surface water was specifically excluded under the policy. After determining that surface water indisputably caused damage to the property, the court concluded that the damage was not covered by the insurance

policy. The court stated, "[t]hat a covered risk may have contributed to the loss is irrelevant in light of the clear language of the lead-in clause." Id. at 298.[1] See also, Front Row Theatre, Inc. v. American Mfr.'s Mut. Ins. Cos., 18 F.3d 1343, 1347 (6th Cir. 1994) (interpreting the identical lead-in clause and holding that where an excluded peril is a partial cause of property damage, the insurer is not required to pay even if the principal cause of the damage was an included peril).

In light of this precedent, Nationwide asserts that it is entitled to summary judgment regarding the basement damage (Count I - Breach of Contract), because it is undisputed that at least some of that basement damage was caused by an excluded loss. Nationwide cites to DeMarco's report, referred to above, along with the report and deposition of Pisano's expert, Mark Conti. We examine each in turn.

First, Conti's March 13, 2008 report states:

> The first floor of 1648 Passyunck [sic] Avenue and the complete basement suffered water damage caused by a break in the single drain line draining the roofs of all three addresses.
> . . .
> It is my opinion the basement damages were caused by all the rain water entering the basement areas through the broken roof drain pipe **and any additional water, from whatever source, only contributed to the damage already done**.

(Conti Report, Pisano's Response, Exhibit A).

At deposition, Conti explained the conclusions in his report as follows:

> Q: Under your conclusion section, [] you state there was a pipe break in a single drainpipe that drained all three roofs on 1648, 50, 52 Passyunk Avenue. . .
>
> A: . . . I do know now that that is wrong. So, I'm willing to amend any of that.
> . . .

---

[1] The court in T.H.E. Ins. discussed the Pennsylvania Superior Court decision in Spece v. Erie Ins. Group, 850 A.2d 679 (Pa. Super. 2004), which interpreted the same lead-in clause but did not exclude coverage. In Spece, the court found two exclusions to be ambiguous under the circumstances, and therefore, coverage was not precluded. Here, Pisano has not argued that the policy is ambiguous, and, even if he had, we find that the language is clear.

Q: You write in your conclusion, it is my opinion the basement damages were caused by all the rainwater entering the basement areas through the broken roof drainpipe. And any additional water, from whatever source, only contributed to the damage already done. **By this statement, is it fair to say that you acknowledge there was additional water in that basement that came from some other source**?

A: **Yes**.

. . .

Q: . . . **do you have any opinions as to the possible areas or sources where this additional water came into the basement, above the 3.8 that you just mentioned?**[2]

A: **Well, I think it came up – I do not believe it came through the sewer line . . .**

. . .

A: **Well, in part, it came up the sump well, it came down from upstairs, it came through the door.**

Q: **I understand, but the 3.8, you believe, came in from the drainpipe . . . in from, the roof drainpipe. My question to you is, with respect to the water above the 3.8 to the 40 inches, or so, where it came from? You told me you believe it may have come from the sump well.**

A: **Could have.**

Q: **What other sources?**

A: **The back door.**

Q: That's the back door from the 12th Street side, the glass door?

A: Yeah, there's two doors. . .

. . .

A: . . . there's a regular door and then there's a storm door. The glass door is a storm door, combination door, security door, heavy door.

. . .

Q: The foundation wall?

A: It could, I'm sure some came in there. I don't know how to define what quantity. I also think that some probably came down the back steps.

---

[2] Earlier in his deposition, Conti explained that, according to the weather bureau, about 3.8 inches of rain fell onto the roof, and Conti opined that 3.8 inches of the water in the basement came from the roof via the broken drain line. (Deposition of Conti, Nationwide's Reply, Exhibit B, p. 17).

7

. . .

>   Q: **Mr. Conti, would you agree with me that the other 38 or 39 inches of water in the basement, that that came from some other source or sources than the roof drainpipe?**
>
>   A: **Yes**.

(Deposition of Conti, Nationwide's Reply, Exhibit B, pp. 10-35).

Given Pisano's own expert's assessment, both in his report and at deposition, we conclude that the undisputed facts establish that the water in the basement came from not only the roof drain pipe, but also the sump well and surface water, both excluded sources, and that these excluded sources contributed to the basement damage. We reach this conclusion for several reasons.

First, it is undisputed that the water in the basement came from both the broken roof drain pipe and additional excluded sources under the Policy. As set forth above, Conti agreed in his deposition that some of the water "came up the sump well." Conti also acknowledged that water entered the basement through the back door (e.g., surface water). Importantly, Pisano's sur-reply brief states that, "it is admitted that Plaintiff's expert, Mark Conti, conceded at deposition that surface water entered the basement." At oral argument on the motion, Pisano's counsel also acknowledged that surface water entered the basement. (Pisano's Sur-reply, p. 2; N.T. 5/7/09, p. 6; see also DeMarco Report, Nationwide's Motion, Exhibit C; and Conti's Deposition, Nationwide's Reply, Exhibit B).

Second, both experts agree that the excluded sources of water (sump pump and surface water) contributed to the basement damage. DeMarco's report states, "the vast majority of the water damage is a result of water entering the basement from a ground source." Conti's report notes that, "any additional water [water not from the broken roof drain pipe], from whatever source, only

contributed to the damage already done." In his deposition, Conti also acknowledged that of the almost 4 feet of total water in the basement, only approximately 3.8 inches came from the roof drain. Thus, it is undisputed that a certain amount of water from excluded sources entered the basement, and contributed to the damage.

At oral argument, Pisano's counsel urged that the Motion be denied due to a factual dispute as to whether the roof drain water entered the basement first, causing all of the damage. Counsel pointed to Conti's deposition, where he testified that the water from the broken drain pipe arrived in the basement first. (Conti Deposition, Natiowide's Reply, Exhibit B). However, whether the roof drain water caused the first damage is of no moment, because the lead-in clause specifically precludes coverage if an excluded cause, " . . . contributes concurrently or <u>in any sequence</u>." (Emphasis added).

Lastly, in his sur-reply brief, Pisano cites to Conti's February 9, 2009 supplemental report as creating a factual issue regarding the source of the basement damage. He argues that this report reflects that water from the broken roof drain pipe caused all of the basement damage first and then the excluded sources entered the basement. (Pisano's Sur-reply, pp. 2-3). The portion of the report relied upon states:

> At your request I have reviewed the weather data for the period of August 26 thru August 29, 2006 in order to form an opinion as to what damage would have been sustained if only the water from the roof had entered [Pisano's] property on those dates. . . The question is how much rain water entered the building and what kind of damage would it have caused?
> . . .
> The water came from a broken pipe . . . The water ran down the walls and would have saturated the walls at the floor level at a maximum depth of 3.8" . . . The resulting damage would have been very similar to the damages listed in my estimate of January 18, 2008. The drywall ceilings and walls would have to be replaced, as well as, the floor coverings such as carpet and resilient floor tile. The wood doors,

> paneling and all the wood trims would have to be replaced, the electrical light fixtures and devices would have to be replaced and the entire area would have to be decorated.  Items that may have been salvageable would have been the gas boiler but not the boiler electronics and probably not the gas thermocouple as they are subject to moisture corrosion.  The shower in the bath and some of the listed contents probably could have been cleaned and serviced.
>
> . . .
>
> My opinion concerning the water damage to the Pisano properties remains strikingly similar to the damages listed in my estimate of January 18, 2008.  The same building materials in the same quantities would still have to be replaced in order to return the property to the condition it was in prior to the damages caused by the broken pipe.

(Conti Supplemental Report, Pisano's Response, Exhibit B).

This supplemental report does not directly address whether water from excluded sources caused or contributed to the basement damage or in what sequence the damage occurred.  Rather, at best, this report speaks to damage that would have occurred if only water from the broken drain pipe had entered the basement.  It does not explain Conti's original report that "any additional water [water not from the broken roof drain pipe], from whatever source, only contributed to the damage already done."  Nor does it clarify Conti's deposition testimony wherein he acknowledged that water from the "sump well" and from the door entered the basement.  In conclusion, we find that Pisano has failed to present any facts establishing that water from excluded sources did not contribute to the basement damage.  Consequently, summary judgment will be granted as to Count I (basement damages only).

B.  **Bad Faith**

Nationwide next moves to dismiss Count II, Pisano's bad faith claim brought under 42 Pa. C.S. § 8371.  Section 8371 provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith towards the insured, the court may take all of the following actions:
> (1) Award interest on the amount of the claim from the date the claim was made by the

>insured in an amount equal to the prime rate of interest plus 3%.
>(2) Award punitive damages against the insurer.
>(3) Assess court costs and attorney fees against the insurer.

42 Pa. C.S. § 8371. In order to prevail on a claim for bad faith, a plaintiff must show by clear and convincing evidence that the insurer: (1) did not have a reasonable basis for denying benefits under the policy; and (2) knew or recklessly disregarded its lack of reasonable basis in denying the claim. UPMC Health Sys. v. Metro. Life Ins. Co., 391 F.3d 497, 505 (3d Cir. 2004).

As we agree with Nationwide that Pisano's claim for basement damage should be excluded from coverage, and Nationwide's partial denial was proper, Count II should be dismissed. In any event, Pisano's bad faith claims would be dismissed because he has failed to present any evidence that Nationwide did not have a reasonable basis for partially denying coverage. In Allison v. Allstate Indemnity Co., 2008 WL 2631557, at *4 (E.D. Pa. June 27, 2008), the court granted an insurer's motion for summary judgment as to bad faith where the insurer denied coverage based on an expert opinion formed after a thorough investigation. Here, Nationwide relied on the report of expert Jody DeMarco, which attributed the majority of basement damage to excluded sources.

The facts cited by Pisano in his response and sur-reply briefs do not support his bad faith claim. First, he points out that Porter, Nationwide's adjustor, thought that the original damage estimate prepared by Joseph Kurtz was low. (Pisano's Response, p. 13). However, Pisano has not explained why this establishes bad faith on the part of Nationwide.

Pisano also attempts to rebut DeMarco's conclusion that surface water caused the majority of basement damage by pointing out that, "[DeMarco] never considered the weather of other previous calendar days such as October 8, 2005,[] in which heavier rain was experienced, and the basement was water-tight from other days when the precipitation was more severe. Such a goal-

oriented, decision-making process illustrates Defendant's bad faith in denying Plaintiff's claim." (Pisano's Response, p. 13).  We are unable to see how a storm from 2005 is related to the current claim or how that storm provides evidence of bad faith by Nationwide.  It remains undisputed that after the storm at issue, Nationwide sent numerous individuals to Pisano's property to inspect the damage, and that Nationwide's experts determined that the basement damage resulted from an excluded cause.  As such, Count II for bad faith is also dismissed.

### III.  CONCLUSION

For the foregoing reasons, Nationwide's Motion will be granted.  Our Order follows.